IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-CV-2386-MSK

RAMONA G. MORALES,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

**OPINION AND ORDER REVERSING THE COMMISSIONER'S DECISION**

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint (**# 1**), the Plaintiff's Opening Brief (**# 15**), the Defendant's Response (**# 17**), and the Plaintiff's Reply (**# 20**). For the following reasons, the Commissioner's decision is reversed and the matter is remanded for further proceedings.

## I.    JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II.    BACKGROUND

### A.    Procedural History

Ramona Morales seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits (DIB) under the Social Security Act. In December 2014, Ms. Morales filed for DIB, claiming she became disabled in September 2013, later

amended to August 2014.  Tr. at 39, 169–70.  Her application was denied at all administrative levels and she now appeals to this Court.

**B.     Factual Background**

The Court summarizes only the medical evidence relevant to its decision.  Here, the dispositive issue concerns the weight given to the medical opinions as to her functional capacity.  At the time of her alleged onset of disability, Ms. Morales was 54 years old.  Tr. at 169.  She was previously employed as a receptionist and a fast-food services manager.  Tr. at 218.  She has a history of musculoskeletal problems that were exacerbated by injuries that she suffered in a vehicular accident in July 2016.

In March 2015, consultant Dr. Matthew Simpson examined Ms. Morales.  Tr. at 649–60.  Although he conducted a thorough exam of all of Ms. Morales' systems, the relevant findings come from his musculoskeletal exam.  Tr. at 657–58.  He observed normal range of motion in her cervical and dorsolumbar spine, knee joints, ankle joints, elbow joints, wrist joints, and finger joints.  Tr. at 657–58.  He also observed mild discomfort while examining her hip joints, though her straight-leg tests were negative, as well as her shoulder joints.  Tr. at 657.  Moving her to spine, he found there was no cervical, thoracic, lumbar, or sacral spinous process — only mild tenderness to palpitation in paraspinal areas on the left.  Tr. at 658.  He noted postoperative changes in hardware installed in Ms. Morales' lumbar spine during a prior surgery, but that there was no evidence of hardware failure.  Tr. at 659.  Based on these observations, he diagnosed her with chronic lumbar back pain but no "red flag signs on examination".  Tr. at 659.  He then opined that Ms. Morales could (1) sit without limitation during a workday; (2) stand three to five hours and walk between two and four hours in a workday; (3) frequently lift

2

and carry 20 pounds and occasionally lift and carry 35 pounds; (4) occasionally bend, stoop, squat, or crouch; (5) manipulate with her fingers and arms without limitation; and should (6) use a cane for intermediate distances, longer distances, and uneven terrain. Tr. at 660.

Ms. Morales has a treatment relationship with Dr. Munni Setty. In November 2016, Dr. Setty completed a physical residual functional capacity (RFC) questionnaire. Tr. at 899–903. Dr. Setty observed that Ms. Morales has chronic lower back pain, depression, fatigue, numbness / severe neuropathy, neck pain, and balance / instability. Tr. at 899. Based on her treatment relationship with Ms. Morales, Dr. Setty opined that: (1) Ms. Morales' pain was such that it would constantly interfere with her attention and concentration needed to perform simple work tasks; (2) Ms. Morales was incapable of handling even low-stress jobs; (3) Ms. Morales could not walk more than one block without severe pain; (4) she could not sit for more than 10 minutes at a time or stand for more than five minutes at a time; (5) Ms. Morales must walk every 90 minutes for five minutes; (6) Ms. Morales needed a job that permits the volitional shifting of positions and unscheduled breaks; (7) Ms. Morales only used a cane as needed for balance; (8) Ms. Morales could not lift or carry anything more than 10 pounds, look down, turn her head right or left, look up twist, stoop, or climb; (9) Ms. Morales could rarely crouch and climb stairs; and that (10) Ms. Morales could manipulate and twist objects with her hands and fingers less than half of a workday, and reach overhead less than 5% of a workday. Tr. at 901–03.

**C.   The ALJ's Decision**

In May 2017, the ALJ issued a decision unfavorable to Ms. Morales. At step one, the ALJ found that she had not engaged in substantial gainful activity since August 2014. Tr. at 19. At step two, the ALJ found that Ms. Morales had the following severe impairments: history of

right knee, status-post total knee replacement; mild right knee arthritis; obesity; lumbar fusion with left L3-4 radiculopathy; peripheral neuropathy; diabetes; osteoarthritis and history of C2 fracture; and depression and anxiety. Tr. at 19. At step three, the ALJ found that Ms. Morales did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1. Tr. at 19. The ALJ further found that Ms. Morales had the residual functional capacity (RFC) to perform light work with the following characteristics: she can lift, carry, push, or pull 20 pounds occasionally and ten pounds frequently; she can sit for six hours in an eight-hour workday with normal breaks; she can stand or walk two hours in an eight-hour workday with normal breaks; if she walks more than two blocks, she must have the opportunity to use a cane; she can climb ramps and stairs, stoop, kneel, crouch, crawl, and balance occasionally; she cannot climb ladders, ropes, or scaffolds; she can drive for work occasionally; she cannot work at heights; she can understand, remember, and carry out tasks learned in two years or less; and she can tolerate frequent interaction with the public. Tr. at 22. At step four, the ALJ found that Ms. Morales was capable of performing her past relevant work as a receptionist. Tr. at 26. The ALJ did not make alternative findings at step five.

At the hearing, the ALJ heard testimony about Ms. Morales' mental impairments from Dr. Mary Buban, the medical expert. Tr. 42–46. In crafting Ms. Morales' RFC, the ALJ gave minimal weight to Dr. Setty's opinion, great weight to Dr. Simpson's opinion, little weight to an opinion from Dr. Mary Ann Wharry (a psychiatrist), and great weight to Dr. Buban's testimony at the hearing. Tr. at 25–26.

## III. STANDARD OF REVIEW

Although the Court's review is de novo, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

## IV. DISCUSSION

Ms. Morales raises several challenges to the Commissioner's ruling. She contends that: (1) the ALJ failed to find as severe impairments a vertebral artery injury and degenerative disc disease; (2) the ALJ improperly evaluated Ms. Morales' subjective complaints; (3) the ALJ improperly evaluated the medical opinion of Dr. Setty; (4) the ALJ erred in making the RFC determination; and (5) the ALJ failed to pose a complete hypothetical question to the vocational expert. Finding legal error in the evaluation of medical opinions, the Court reverses and remands the Commissioner's denial of benefits without reaching most of the other issues.

A treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques *and* is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). In answering these questions, the ALJ must articulate specific, legitimate reasons that describe how the opinion is unsupported by clinical and laboratory diagnostic techniques, or

identify the inconsistent evidence in the record. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

If the answer to either of these inquiries is "No", then the opinion is not accorded controlling weight, but is, instead, assessed for comparative weight relative to other medical opinions. The factors considered for comparative this assessment of medical opinions are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016). In applying these factors, the ALJ must make her findings and reasoning sufficiently specific so the weight given is clear to subsequent reviewers. *Langley*, 373 F.3d at 1119.

As discussed above, Ms. Morales was treated by Dr. Munni Setty, who submitted an opinion based upon a lengthy treatment relationship. He opined that, among other things, Ms. Morales had to frequently alter between sitting, standing, and walking, all on her own volition; could never lift or carry more than 10 pounds; and was severely limited in moving her neck. Tr. at 901–03. The ALJ gave Dr. Setty's opinion little weight stating:

> Munni Setty, M.D. submitted a physical residual functional capacity questionnaire dated November 8, 2016. Dr. Setty described significant limitations that suggest a less than sedentary capacity. The undersigned gives minimal weight to this assessment, as the limitations described are not consistent with his examination findings. The corresponding examination describes no neurologic deficits and normal muscle strength.

Tr. at 25 (citations omitted).

The only reason that the ALJ gave minimal weight to Dr. Setty's opinions was because

the ALJ perceived Dr. Setty's limitations to be inconsistent with her examination findings, particularly the absence of neurological defects and a finding of "normal muscle strength". Inconsistencies between examination findings and functional capacity opinions can justify rejection of the functional capacity opinions. *See, e.g.*, *Endriss v. Astrue*, 506 F. App'x 772, 776 (10th Cir. 2012). However, the ALJ must (1) point out what specific information in the record is inconsistent with the opinion, and (2) state how the information in the record is inconsistent. *See Langley*, 373 F.3d at 1119 (reasons must be sufficiently specific to make clear to any subsequent reviewers the reasons for the weight given). Here, the ALJ's justification is insufficient in both respects.

With regard to findings of "normal muscle strength", there are none in Dr. Setty's November 2016 report, and the ALJ failed to identify any reference to "normal muscle strength" in the record. Thus, there is no identification of a factual inconsistency in the record.

In contrast, the ALJ is correct that Dr. Setty's November 2016 notes include no findings that Ms. Morales had neurological defects. However, the ALJ does not explain how the absence of noted neurological deficits was inconsistent with all of Dr. Setty's opinions, particularly in light of the ALJ's finding of severe impairments of left L3-4 radiculopathy and peripheral neuropathy. The ALJ's own findings suggest neurological deficits and pain, which were the basis of several of Dr. Setty's restrictions. Ultimately, however, the question of whether Ms. Morales had neurological deficits is addressed in Dr. Setty's a letter to the Appeals Council. She stated that her report "was inaccurate in noting that [Ms.] Morales had 'no neurological deficits'" and she pointed to other treatment notes revealing that Ms. Morales' "polyneuropathy in her bilateral lower extremities had progressed to 'very severe'". Tr. at 7. This letter obviates

7

the only inconsistency between Dr. Setty's functional opinions and her examination report, and leaves the ALJ's explanation for giving Dr. Setty's opinion little weight unjustified.

This error is not harmless because Dr. Setty has opined that Ms. Morales can only perform sedentary work, which is facially inconsistent with an RFC that contemplates the performance of light work. The ALJ should consider Dr. Setty's letter on remand.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED AND REMANDED** for proceedings consistent with this opinion. Judgment shall enter in favor of Ms. Morales.

Dated this 2nd day of November, 2018.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge